# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

| | | |
|---|---|---|
| ORAN CAUDLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:11CV0009 DDN |
| | ) | |
| KATHY GONZALEZ, et al.,, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of Oran Caudle (registration no. 1037263), an inmate at Northeast Correctional Center ("NECC"), for leave to commence this action without payment of the required filing fee [Doc. #2]. For the reasons stated below, the Court finds that the Plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $15.65. See 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must

assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. Id.

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of Plaintiff's account indicates an average monthly deposit of $78.25, and an average monthly balance of $8.40. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $15.65, which is 20 percent of Plaintiff's average monthly deposit.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a Defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact."

Neitzke v. Williams, 490 U.S. 319, 328 (1989). An action is malicious if it is undertaken for the purpose of harassing the named Defendants and not for the purpose of vindicating a cognizable right. Spencer v. Rhodes, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), aff'd 826 F.2d 1059 (4th Cir. 1987).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." Id. at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. Id. at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. The Plaintiff is required to plead facts that show more than the "mere possibility of misconduct." Id. The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether Plaintiff's conclusion is the most plausible or whether it is more likely that no misconduct occurred. Id. at 1950, 51-52.

## The Complaint

Plaintiff brings this action under 42 U.S.C. § 1983. Named as Defendants are Kathy Gonzalez (Director of Nursing), Thomas Cabrera (Physician, Correctional Medical Services ("CMS")), Gene Roxas (same), Jill Perkins (Health Services Administrator), Tammy Harr (Director of Nursing), Urology Care, Inc., Eric Vogt (Physician, Urology Care, Inc.), Debra Steinman (Regional Manager, CMS), Elizabeth Conley (Regional Medical Director, CMS), Gary Campbell (Regional Medical Director, CMS), and Correctional Medical Services, Inc.

Plaintiff alleges that in the summer of 2009 he developed severe pain in his abdomen, pelvis, and testicles. Plaintiff says the pain was so severe that it disrupted all of his normal life activities. Plaintiff claims that he started filing sick call requests, but Plaintiff claims that "CMS nurses" blocked those requests and did not allow him to see a physician. Plaintiff claims that he suffered for several months before he saw a physician.

Plaintiff maintains that he saw Defendant Cabrera in April 2010, and Plaintiff says that Cabrera prescribed over-the-counter pain medications for him, which did not relieve Plaintiff's severe pain.

On May 5, 2010, Cabrera referred Plaintiff to Urology Care, Inc. Plaintiff saw Defendant Vogt, a urologist, at Urology Care, Inc., on May 21, 2010. Vogt examined

Plaintiff and ordered a genitourinary ("GU") CT scan and Extracorporeal Shock Wave Lithotripsy ("ESWL"), which is a treatment for kidney stones. Vogt also prescribed Flomax. Plaintiff was not given a prescription for pain medications.

On June 3, 2010, the GU CT scan was performed, which revealed the presence of renal calculi (kidney stones). The scan also showed that Plaintiff had a cyst on his liver and diverticulitis. Still, Plaintiff says, Cabrera did not give him pain medications.

On July 2, 2010, the ESWL was completed. Plaintiff was not given any pain medications at that time.

On July 19, 2010, Plaintiff saw Vogt again. Vogt examined Plaintiff and diagnosed him with prostatitis. Vogt prescribed antibiotics as well as naproxen for Plaintiff's pain, which Plaintiff maintains was completely ineffective.

Plaintiff claims that when he returned to NECC he was not given his antibiotics or naproxen. Plaintiff says a nurse told him he probably did not need those medications any more. Plaintiff began receiving the naproxen some time later, but he says he had an allergic reaction to it and stopped taking it.

Plaintiff saw Vogt again on September 9, 2010. Vogt ordered a procedure to burn scar tissue from Plaintiff's prostate, but Vogt did not prescribe any pain medications at that time.

On September 13, 2010, Cabrera approved an anti-inflammatory medication for Plaintiff called meloxicam. Cabrera was also trying to get approval for a "pill camera test" at that time.

Plaintiff alleges that Defendants Conley and Campbell examined Plaintiff's medical records and denied the pill camera and any pain medications. Plaintiff asserts that he continued to remain in severe pain all this time.

On September 30, 2010, Cabrera informed Plaintiff that he had a bad infection deep within his prostate. Cabrera further informed Plaintiff that he was approved for the scar tissue removal procedure. Cabrera prescribed a stool softener and fiber, but he did not prescribe any pain medications.

On October 4, 2010, Plaintiff was taken to Urology Care for the scar tissue removal procedure. Plaintiff says he was not at first given anything for pain and that the procedure was exceedingly painful. The nurse indicated to Plaintiff that he was supposed to receive an anti-spasm medication as well as pain medication prior to the procedure. After about thirty minutes, the nurse gave Plaintiff a shot of pain medicine and two anti-spasm pills. After the procedure, Vogt prescribed pain medications for Plaintiff.

Plaintiff alleges that when he was returned to NECC he was not allowed to have the pain medications that Vogt prescribed. On October 21, 2010, Cabrera informed Plaintiff that Conley and Campbell had denied his request for a pill camera test.

Plaintiff alleges, in a conclusory fashion, that Defendants Steinman, Gonzales, Perkins, and Harr "then engaged [in a] meeting of the minds and agreement between themselves to secret[] the severity of Plaintiff's pain and suffering through falsifying various official reports that Plaintiff had all of the required medications and treatments to combat his pain and suffering."

Plaintiff avers that he continues to suffer from severe pain.

**Discussion**

The complaint survives initial review as to Defendants Cabrera, Conley, and Campbell. As a result, the Court will order these Defendants to respond to the complaint.

To state a claim for unconstitutional medical mistreatment, Plaintiff must plead facts sufficient to indicate deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Camberos v. Branstad, 73 F.3d 174, 175 (8th Cir. 1995). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. Estelle, 429 U.S. at 106. To show deliberate indifference, Plaintiff must allege that he suffered objectively serious medical needs and that Defendants

actually knew of but disregarded those needs. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). To state a claim against Defendant CMS, Plaintiff must allege that there was a policy, custom, or official action that caused an actionable injury. Sanders v. Sears Roebuck & Co., 984 F.2d 972, 975-76 (8th Cir. 1993). The complaint fails to state a claim against Vogt because the allegations show that Vogt responded to Plaintiff's needs by prescribing tests, procedures, and medications. Plaintiff merely disagrees with the treatments Vogt provided, which may go to a medical malpractice claim, but which is insufficient to state a claim under the Eighth Amendment. The complaint further fails to state a claim against CMS because Plaintiff has not alleged the existence of a custom or policy that caused an actionable injury. As a result, the Court will dismiss Defendants Vogt and CMS from this case.

The complaint is frivolous as to Defendant Urology Care, Inc., because this Defendant is not a state actor. But even if Urology Care, Inc., were deemed to be a state actor, Plaintiff's claims against it would still fail because Plaintiff has not alleged that Urology Care, Inc., had a policy or custom that caused an actionable injury. As a result, the Court will dismiss Urology Care, Inc., from this case.

To properly plead a claim for civil conspiracy under § 1983, a Plaintiff must include factual allegations showing a "meeting of the minds" concerning unconstitutional conduct; although an express agreement between the purported

conspirators need not be alleged, there must be something more than the summary allegation of a conspiracy before such a claim can withstand review under § 1915(e). See Mershon v. Beasely, 994 F.2d 449, 451 (8th Cir. 1993). Plaintiff's claims against Steinman, Gonzalez, Perkins, and Harr are completely conclusory and are devoid of any facts demonstrating that a meeting of the minds occurred between these Defendants. Furthermore, Plaintiff has failed to demonstrate how the alleged conspiracy injured him. As a result, the Court will dismiss Defendants Steinman, Gonzalez, Perkins, and Harr from this case.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990); see also Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where Plaintiff fails to allege that Defendant was personally involved in or directly responsible for the incidents that injured Plaintiff); Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits). In the instant action, Plaintiff has not set forth any facts indicating that Defendant Roxas was directly involved in or personally responsible for the alleged violations of his constitutional rights. As a result, the Court will dismiss Defendant Roxas from this case.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $15.65 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that if Plaintiff fails to pay the initial partial filing fee within thirty (30) days of the date of this Order, then this case will be dismissed without prejudice.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to Defendants Cabrera, Conley, and Campbell.

**IT IS FURTHER ORDERED** that, pursuant to 42 U.S.C. § 1997e(g)(2), Defendants Cabrera, Conley, and Campbell shall reply to Plaintiff's claims within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to Defendants Gonzalez, Roxas, Perkins, Harr, Urology Care, Inc., Vogt, Steinman, or CMS because, as to these Defendants, the

complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

**IT IS FURTHER ORDERED** that this case is assigned to Track 5B: Prisoner Standard.

An appropriate Order of Partial Dismissal shall accompany this Memorandum and Order.

Dated this 2nd day of March, 2011.

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE