ORAN CAUDLE,                          )
                                      )
      Plaintiff(s),             )
                                      )
    vs.                            )      Case No. 2:11CV9 JCH
                                      )
KATHY GONZALEZ, et al.,               )
                                      )
      Defendant(s).             )

## MEMORANDUM AND ORDER

This matter is before the Court on Dr. Tomas Cabrera's Motion for Summary Judgment (ECF No. 48), Defendant Dr. Elizabeth Conley's Motion for Summary Judgment (ECF No. 51), and Defendant Dr. Gary Campbell's Motion for Summary Judgment (ECF No. 54), all filed on November 18, 2011. These motions are fully briefed and ready for disposition.

## BACKGROUND

At all relevant times, Plaintiff was an inmate confined in the Northeast Correctional Center ("NECC") of the Missouri Department of Corrections ("MDOC"). (Defendant Dr. Tomas Cabrera's Statement of Uncontroverted Material Facts in Support of His Motion for Summary Judgment ("Cabrera SUMF"), ECF No. 49, ¶ 1, citing Complaint, ECF No. 1). Dr. Elizabeth Conley is a medical doctor and the former Regional Medical Director of Correctional Medical Services ("CMS"), a private entity providing medical care to inmates within the MDOC. (Defendant Dr. Elizabeth Conley's Statement of Uncontroverted Material Facts in Support of Her Motion for Summary Judgment ("Conley SUMF"), ECF No. 52 ¶¶ 1, 3, citing Exhibit B, Declaration of Dr. Conley, ECF No. 52-3, ¶¶ 3, 4). Dr. Gary Campbell is a medical doctor also providing medical services on behalf of CMS. (See Defendant Dr. Gary Campbell's Statement of Uncontroverted Material Facts in

Support of His Motion for Summary Judgment ("Campbell SUMF"), ECF No. 55, ¶ 1, citing Exhibit B, Declaration of Dr. Campbell, ECF No. 55-3, ¶ 3; Complaint, ¶ 9). Dr. Tomas Cabrera is also a medical doctor providing medical services on behalf of CMS. (Cabrera SUMF, ¶¶ 2, 3).

Plaintiff first complained of severe right flank pain on April 29, 2009, during a "nurse sick call." (Cabrera SUMF, ¶ 7, citing Exhibit A, Plaintiff's medical records; Exhibit B, Declaration of Tomas Cabrera, M.D., ¶ 8; and Exhibit C, Deposition of Oran Caudle, pp. 20-23). Plaintiff's vital signs were taken, along with a urine dip. (Id.). Dr. Cabrera examined Plaintiff on that date and took a history, performed an evaluation, and assessed Plaintiff's condition. (Id.). Dr. Cabrera ordered an anti-inflammatory/pain medicine, Toradol, for immediate use, along with another pain medicine, Darvocet, for two days. (Id.). Dr. Cabrera ordered Plaintiff's monitoring in the Transitional Care Unit ("TCU"). (Id.). Dr. Cabrera also ordered Toradol pills and Naproxen, another anti-inflammatory and pain medicine, for 15 days, along with Tylenol. (Id.). Dr. Cabrera also ordered Colace, a stool softener, and docusate sodium, a laxative, because Plaintiff felt he was constipated. (Id.). Once Plaintiff had a bowel movement, his pain was relieved. (Id.).

On August 13, 2009, Plaintiff had a dental problem, and Dr. Robert Jarrett prescribed him Naproxen for 10 days. (Id., ¶ 8, citing Exhibit A; Exhibit B, ¶ 9; and Exhibit C, pp. 24-25). On August 15, 2009, Plaintiff claimed to be having an allergic reaction to Naproxen. (Id.). Plaintiff was offered Tylenol or Motrin for tooth pain, but Plaintiff stated he did not want any other pills and would deal with the pain. (Id.).

On October 1, 2009, Plaintiff came to the medical unit with a complaint of lower abdominal pain and testicular pain. (Id., ¶ 9, citing Exhibit A; Exhibit B, ¶ 10; and Exhibit C, pp. 25-26). Plaintiff informed the medical unit that his pain began two days before and that the pain would come and go. (Id.). Plaintiff also complained of burning with urination. (Id.). Plaintiff's vital signs were

taken and he was examined. (Id.). A urine sample was also taken, which was found to be normal. (Id.).

On October 7, 2009, Dr. Cabrera saw Plaintiff after Plaintiff had chronic lower abdominal pain for a week. (Id., ¶ 10, citing Exhibit A; Exhibit B, ¶ 11; and Exhibit C, pp. 26-28). Plaintiff had some burning on urination but did not have nausea, vomiting, or diarrhea. (Id.). Dr. Cabrera took a history and evaluated Plaintiff. (Id.). Dr. Cabrera examined Plaintiff's testicles and abdomen. (Id.). Plaintiff's testicles were tender and he also had hemorrhoids. (Id.). Dr. Cabrera provided Plaintiff with Bactrim, an antibiotic, and a hemorrhoid suppository. (Id.).

On November 2, 2009, Plaintiff went to the medical unit complaining of itching and burning. (Id., ¶ 11, citing Exhibit A; Exhibit B, ¶ 12; and Exhibit C, pp. 29-30). Plaintiff also complained of lower abdominal pain. (Id.). Plaintiff's vital signs were taken. (Id.). Plaintiff spoke to Nurse Linda Wiley and was referred to Dr. Cabrera. (Id.). Dr. Cabrera saw Plaintiff on November 6, 2009, for a red, generalized itchy rash after taking Bactrim. (Id.). At this time Plaintiff also complained of non-specific lower abdominal pains. (Id.). Dr. Cabrera took a history and assessed Plaintiff with a history of urinary stones and testicular pains. (Id.). Dr. Cabrera ordered Prednisone, a steroid, to help lower inflammation and reduce pain. (Id.). Dr. Cabrera also ordered labs and a urinalysis. (Id.). Plaintiff's lab results were generally normal, except for a slightly high level of glucose and MCHC (average measurement of the hemoglobin concentration in packed red blood cells). (Id.).

On November 18, 2009, Dr. Cabrera saw Plaintiff to follow up on his lab results, which were normal. (Id., ¶ 12, citing Exhibit A; Exhibit B, ¶ 13; and Exhibit C, p. 30). Plaintiff inquired about the possibility of Hepatitis, so Dr. Cabrera ordered a Hepatitis profile, which was positive for Hepatitis C. (Id.).

Plaintiff was again seen by nurses or Dr. Cabrera on December 4, 2009; December 14, 2009; December 16, 2009; December 22, 2009; January 21, 2010; February 8, 2010; February 11, 2010; and March 2, 2010. (Id., ¶ 13, citing Exhibit A; Exhibit B, ¶ 14; and Exhibit C, pp. 31-35). Plaintiff did not complain of pain in his abdomen, pelvis, testicles, back, or spine during any of these visits. (Id.). On March 2, 2010, Dr. Cabrera requested Plaintiff be considered for interferon therapy, and Dr. Conley approved the request for HCV Genotyping on March 4, 2010. (Conley SUMF, citing Exhibit A, Plaintiff's medical records, and Exhibit B, ¶ 9).

Plaintiff went to nurse sick call on March 10, 2010, with a complaint of right mid-flank pain. (Cabrera SUMF, ¶ 14, citing Exhibit A; Exhibit B, ¶ 15; Exhibit C, pp. 35-37). Plaintiff's vital signs were taken, which were normal. (Id.). Dr. Cabrera saw Plaintiff on March 17, 2010. (Id.). Dr. Cabrera took a history, performed an evaluation, and assessed Plaintiff's condition. (Id.). Plaintiff's vital signs were taken, which were normal. (Id.). Plaintiff's complaint was persistent lower abdominal pain radiating to his testicles and rectum area. (Id.). Plaintiff also complained that he had difficulty with urination. (Id.). Dr. Cabrera examined Plaintiff and ordered a urinary flow study. (Id.). Dr. Cabrera felt Plaintiff's prostate was enlarged and tender, but his testicles were normal. (Id.). Plaintiff's lower abdominal exam was normal. (Id.). Dr. Cabrera assessed Plaintiff as having acute prostatitis. (Id.). Dr. Cabrera ordered a complete blood count ("CBC"), urinalysis, Chemistry 21, and prostate-specific antigen. (Id.). Dr. Cabrera also ordered Ciprofloxacin, an antibiotic. (Id.).

Plaintiff went to the medical unit on March 12, 2010, because of problems urinating, pain in the lower stomach, and mid-right-side pain down into the groin. (Id., ¶ 15, citing Exhibit A; Exhibit B, ¶ 16; and Exhibit C, pp. 37-38). A urinalysis was performed, and Dr. William Rice ordered Pyridium, over-the-counter Tylenol, no bending or stooping, and a lay-in for 10 days.

Dr. Cabrera saw Plaintiff on March 16, 2010. (Id., ¶ 16, citing Exhibit A; Exhibit B, ¶ 15; Exhibit C, p. 38; and Exhibit H, Declaration of Dr. Elizabeth Conley, ¶ 10). Dr. Cabrera took a history and performed an evaluation. (Id.). Dr. Cabrera ordered a liver biopsy, which Dr. Conley approved. (Id.). Dr. Cabrera ordered Cephalexin, an antibiotic, and Keflex, an antibiotic for urinary tract infections. (Id.).

Plaintiff was seen at the medical unit by nursing on March 22, 2010, to discuss his lab results. (Id., ¶ 17, citing Exhibit A; Exhibit B, ¶ 18; and Exhibit C, pp. 39-40). Plaintiff's lab results were all normal, except for his high liver enzymes. (Id.). Dr. Cabrera saw Plaintiff to also discuss his lab results on March 29, 2010. (Id.). Plaintiff's vital signs were taken, which were all normal. (Id.). Plaintiff still complained of hypogastic pains. (Id.). Dr. Cabrera examined and assessed Plaintiff. (Id.). Plaintiff's testicles were normal, and Plaintiff did not have a hernia. (Id.). Dr. Cabrera's plan was to continue antibiotics, get a liver biopsy for Hepatitis C staging, and have Plaintiff return to medical as needed. (Id.).

At 9:45 A.M. on March 31, 2010, Plaintiff was in the TCU post-liver biopsy. (Id., ¶ 18, citing Exhibit A and Exhibit B, ¶ 19). Plaintiff was seen by Nurse Erica Cunningham and denied any pain at that time. (Id.). Plaintiff was seen in his cell at 6:45 P.M. on that date by Nurse Holly Green and again denied any pain. (Id.).

Plaintiff returned to the NECC on April 1, 2010, at 1:00 P.M. (Id., ¶ 19, citing Exhibit A; Exhibit B, ¶ 20; and Exhibit C, pp. 40-41). Plaintiff complained on April 2, 2010, at 7:30 A.M. that he did not get his medications sent with him. (Id.). Dr. Cabrera restarted Plaintiff's medications, which were both antibiotics, immediately. (Id.).

Dr. Cabrera saw Plaintiff on April 6, 2010, to discuss his liver biopsy results, which showed a stage 0 fibrosis. (Id., ¶ 20, citing Exhibit A; Exhibit B, ¶ 21; and Exhibit C, p. 41).

On April 21, 2010, Plaintiff came to the medical unit complaining of abdominal pain that radiated to his testicles and rectal area. (Id., ¶ 21, citing Exhibit A; Exhibit B, ¶ 22; Exhibit C, pp. 41-42; and Exhibit H, ¶ 11). Plaintiff's vital signs were taken along with a urinalysis and a CBC. (Id.). Dr. Conley approved the CBC. (Conley SUMF, ¶ 8, citing Exhibit A; Exhibit B, ¶ 11; Exhibit E, Declaration of Tomas Cabrera, M.D., ¶ 22; and Exhibit F, Deposition of Oran Caudle, pp. 41-42). Plaintiff's lab results were all within normal limits. (Cabrera SUMF, ¶ 21). Dr. Cabrera also ordered an abdominal x-ray, Dulcolax, and magnesium citrate to help Plaintiff with his bowel movements. (Id.). Dr. Cabrera also ordered Plaintiff to follow up with Dr. Gene Roxas or Dr. Rice on April 22 or April 23 for pain. (Id.). The abdominal x-ray showered possible right renal calculi but was negative for intestinal obstruction or significant constipation. (Id.).

Dr. Roxas saw Plaintiff on April 27, 2010. (Id.). Plaintiff's vital signs were taken and were normal. (Id., ¶ 22, citing Exhibit A; Exhibit B, ¶ 23; and Exhibit C, pp. 42-43). Dr. Roxas stated that the patient had no pain in the area of his right lower quadrant, and Dr. Roxas did not think Plaintiff's pain was from the right renal calculi. (Id.). Dr. Roxas ordered Naproxen for pain and told Plaintiff to follow up with Dr. Cabrera the next week. (Id.).

Dr. Cabrera saw Plaintiff on May 5, 2010, for Plaintiff's complaints of lower abdominal pain and difficulty urinating. (Id., ¶ 23, citing Exhibit A; Exhibit B, ¶ 24; Exhibit C, pp. 43-44; Exhibit F, Declaration of Dr. Vogt, ¶ 5; and Exhibit H, ¶ 12). Despite the fact that the urinalysis Dr. Cabrera ordered was negative, Dr. Cabrera treated Plaintiff as having possible prostatitis and cystitis. (Id.). Dr. Cabrera's plan was to send Plaintiff to a urologist in order to get a diagnosis and treatment for Plaintiff's pain and for possible bladder neck obstruction or urethral stenosis. (Id.). Dr. Conley approved the urology consult on May 10, 2010. (Conley SUMF, citing Exhibit A; Exhibit B, ¶ 12; Exhibit E, ¶ 24; and Exhibit F, p. 44). At this time, Plaintiff was already on Naproxen for pain.

(Cabrera SUMF, ¶ 24, citing Exhibit A; Exhibit B, ¶ 25; and Exhibit C, pp. 44, 46-47). Dr. Cabrera ordered Doxycycline and Guaifenesin for Plaintiff's virus on May 19, 2010. (Id.).

Plaintiff was seen by Dr. Eric Vogt, a urologist, on May 21, 2010. (Id., ¶ 25, citing Exhibit A; Exhibit B, ¶ 26; Exhibit C, pp. 44-46; Exhibit D, Dr. Vogt's medical records; and Exhibit F, ¶ 5). A cystoscopy was done to look inside Plaintiff's bladder. (Id.). The cystoscopy showed no evidence of strictures, a mildly elevated bladder neck, and mild prostatic urethra. (Id.). The bladder was negative for suspicious lesions or tumors. (Id.). Uroflow after the cystoscopy showed a moderate to slow rate. (Id.). A Kidney Ureters Bladder (KUB) was also performed, which showed a likely asymptomatic right kidney stone. (Id.). Dr. Vogt's diagnosis on that date was renal calculi, microscopic hematuria, smoking history, and lower urinary tract symptoms. (Id.). Dr. Vogt did not think any of these diagnoses explained Plaintiff's pain complaints. (Id.). Dr. Vogt ordered Flomax, which is used to help treat urinary symptoms. (Id.). Dr. Vogt also recommended a lithrotripsy of the stone ("ESWL") to destroy Plaintiff's kidney stones. (Id.).

On May 21, 2010, Dr. Cabrera ordered the Flomax that Dr. Vogt recommended. (Id., ¶ 26, citing Exhibit A; Exhibit B, ¶ 27; Exhibit C, pp. 46-47, and Exhibit F, ¶ 5). Dr. Cabrera also requested a GU protocol, CT scan, and ESWL, per Dr. Vogt's recommendations. (Id.). This request was approved by Dr. Conley on May 25, 2010. (Id.). The CT scan taken on June 3, 2010, showed non-obstructing calculi in both kidneys, no evidence of ureteral calculi or hydronephrosis, diverticulosis of the colon, small cyst of the liver, and a moderate amount of retained fecal material in the colon. (Id.). None of the test results explained Plaintiff's pain complaints. (Id.). Plaintiff was on Naproxen at this time. (Id.).

Dr. Vogt saw Plaintiff on July 2, 2010, at the Capital Regional Medical Center for the ESWL. (Id., ¶ 28, citing Exhibit D and Exhibit F, ¶ 6). The procedure involved using an x-ray to target the

kidney stone and sending shock waves to break the stone up. (Id.). The procedure went well. (Id.). After the procedure, Plaintiff was given Vicodin to use as needed and was instructed to continue using Flomax. (Id., ¶ 29, citing Exhibit A; Exhibit B, ¶ 29; and Exhibit C, p. 51). Dr. Vogt's post-operative diagnosis was right renal calculi. (Id.).

When Plaintiff returned to the NECC, he did not want to stay in the TCU. (Id.). Plaintiff denied having pain and was given a urinal, strainer, and specimen bottle to strain his urine and save any grit or stones obtained. (Id.). Dr. Cabrera ordered overnight TCU observation and Vicodin as needed in the TCU only. (Id.).

On July 3, 2010, Plaintiff reported to Nurse Nancy Way that he did not have any pain and could pass urine without any problems. (Id., ¶ 30, citing Exhibit A; Exhibit B, ¶ 30; and Exhibit C, pp. 52-53). Plaintiff's vital signs were within normal limits. (Id.). Plaintiff was given a urinal, strainer, and specimen bottle to take back to his cell. (Id.). A lay-in was ordered by the nurse, and Plaintiff was instructed to strain all urine and bring any hard matter to the medical unit. (Id.). Plaintiff was also instructed to increase his water intake, avoid strenuous activity, and return to the medical unit if pain occurred or if he found blood in his urine. (Id.).

On July 5, 2010, Dr. Cabrera requested a referral for a follow-up with Dr. Vogt, and that request was approved. (Id., ¶ 31, citing Exhibit A; Exhibit B, ¶ 31; and Exhibit C, p. 53). Dr. Cabrera examined Plaintiff and took his vital signs on July 12, 2010. (Id.). Plaintiff wanted to be examined for tape worm, but Dr. Cabrera did not believe that Plaintiff had tape worm or that tape worm was causing his lower abdominal pains. (Id.). Plaintiff continued to complain of lower abdominal pains radiating to his testicles. (Id.). Dr. Cabrera ordered a KUB, urinalysis, CBC, and analysis of kidney stones. (Id.).

On July 13, 2010, an x-ray of Plaintiff's abdomen was taken upon Dr. Cabrera's order. (Id., ¶ 33, citing Exhibit A; Exhibit B, ¶ 33; and Exhibit C, pp. 54-56). The x-ray was negative for intestinal obstruction, and the previously seen possible right renal calculus was no longer evident. (Id.). It was determined that this right renal calculus may have passed. (Id.). Dr. Cabrera ordered a urinalysis and CBC on Plaintiff, which were all normal. (Id.).

Dr. Vogt saw Plaintiff on July 19, 2010. (Id., ¶ 34, citing Exhibit A; Exhibit B, ¶ 34; Exhibit C, pp. 55-56; Exhibit D; and Exhibit F, ¶ 7). Plaintiff complained of lower back pain, testicular/scrotal pain, and burning. (Id.). Dr. Vogt took an x-ray to follow up on Plaintiff's kidney stone, and it was no longer visible. (Id.). Dr. Vogt told Plaintiff to continue on Flomax. (Id.). Dr. Vogt also prescribed Proscar, which shrinks the prostate. (Id.). Dr. Vogt recommended non-steroidal anti-inflammatory drugs ("NSAIDs") and Ciprofloxacin. (Id.). Dr. Vogt suggested that Plaintiff consider a microwave treatment or a Transurethral Incision of the Prostate ("TUIP"). (Id.). A TUIP helps patients with bladder flow. (Id.). Dr. Vogt advised Plaintiff that he should drink at least 2 liters of water a day and watch his salt intake. (Id.).

On July 20, 2010, Dr. Cabrera ordered Naproxen, Ciprofloxacin, and Proscar for Plaintiff. (Id., ¶ 35, citing Exhibit A; Exhibit B, ¶ 35; and Exhibit C, p. 56). Plaintiff was already on Flomax at this time. (Id.). On July 23, 2010, Dr. Cabrera requested, and Dr. Conley approved, a referral to Dr. Vogt in 6-8 weeks for a follow-up visit. (Id., ¶ 36, citing Exhibit A; Exhibit B, ¶ 35; Exhibit C, p. 56; and Exhibit H, ¶ 15).

Dr. Cabrera examined Plaintiff on August 25, 2010. (Id., ¶ 37, citing Exhibit A; Exhibit B, ¶ 37; and Exhibit C, pp. 56-57). Plaintiff complained of persistent lower abdominal pain, lower back pain, and diarrhea. (Id.). Dr. Cabrera ordered x-rays, Omeprazole, labs, a urinalysis, and a stool culture. (Id.).

On August 26, 2010, an abdominal x-ray was taken of Plaintiff. (Id., ¶ 38, citing Exhibit A; Exhibit B, ¶ 38; and Exhibit C, p. 58). The x-ray showed a nonspecific gastrointestinal air pattern. (Id.). X-rays of Plaintiff's lumbar spine and pelvis were also taken that day, and both were normal. (Id.). Labs drawn on August 31, 2010, were also normal, except for a liver enzyme that relates to Plaintiff's Hepatitis C. (Id., ¶ 39, citing Exhibit A; Exhibit B, ¶ 39; and Exhibit C, p. 59).

Dr. Cabrera saw Plaintiff on September 8, 2010, and Plaintiff complained of persistent lower abdominal pains and alternative diarrhea and constipation. (Id., ¶ 40, citing Exhibit A; Exhibit B, ¶ 40; and Exhibit C, pp. 59-60). Dr. Cabrera felt he had done everything he could for Plaintiff, but Dr. Cabrera said he would recommend a pill camera procedure wherein the patient swallows a pill that has a camera in it that takes pictures of the patient's intestines. (Id.).

Dr. Vogt saw Plaintiff on September 9, 2010. (Id., ¶ 41, citing Exhibit A; Exhibit B, ¶ 41; Exhibit C, p. 60; Exhibit D; and Exhibit F, ¶ 8). Dr. Vogt performed a bladder scan to assess the post-void volume in Plaintiff's bladder, and the results were essentially normal. (Id.). Dr. Vogt explained to Plaintiff that conservative therapy had failed, and Dr. Vogt discussing the options of a TUIP, a Transurethral Resection of the Prostate ("TURP"), or the microwave treatment. (Id.). Plaintiff chose the microwave treatment. (Id.). Dr. Vogt recommended that Plaintiff continue on Flomax and NSAIDs. (Id.).

On September 13, 2010, Plaintiff came to the medical unit requesting pain assistance. (Id., ¶ 42, citing Exhibit A; Exhibit B, ¶ 42; and Exhibit C, p. 61). Dr. Cabrera ordered Meloxicam to help with Plaintiff's pain. (Id.). Dr. Cabrera also requested the microwave Thermatrix treatment that Dr. Vogt requested, which was approved by Dr. Carl Bynum on September 16, 2010. (Id.).

On September 24, 2010, Plaintiff went to the medical unit to ask about the pill camera procedure that Dr. Cabrera said he would recommend. (Id., ¶ 43, citing Exhibit A; Exhibit B, ¶ 43;

and Exhibit C, p. 62). Plaintiff was informed that the pill camera procedure would not be scheduled until it was determined whether the microwave treatment had helped. (Id.).

On September 29, 2010, Dr. Cabrera ordered Levaquin and a Fleet enema in preparation for Plaintiff's microwave Thermatrix treatment. (Id., ¶ 44, citing Exhibit A; Exhibit B, ¶ 44; and Exhibit C, p. 62).

Dr. Cabrera examined Plaintiff on September 30, 2010. (Id., ¶ 45, citing Exhibit A; Exhibit B, ¶ 45; and Exhibit C, pp. 62-63). Dr. Cabrera's plan was to recommend Psyllium packets, docusate sodium, and a pill camera procedure if the microwave therapy did not work. (Id.). Plaintiff was on Meloxicam and Mobic at the time for pain. (Id.).

Dr. Vogt had suggested Toradol and Valium, an anti-anxiety medication, 30-60 minutes before the microwave treatment. (Id., ¶ 46, citing Exhibit A; Exhibit B, ¶ 46; Exhibit C, pp. 63-64; Exhibit D; and Exhibit E, Grievance File). Dr. Vogt's office was informed prior to the procedure that the medication could not be given in that timeframe because Dr. Vogt's office was 90 minutes from the prison and the medication could not be given in transport. (Id.). Dr. Vogt stated that the order of Levaquin and a Fleet enema would be sufficient prior to the treatment. (Id.).

Dr. Vogt performed the microwave treatment on October 4, 2010. (Id., ¶ 47, citing Exhibit D and Exhibit F, ¶ 9). Plaintiff did well during the procedure. (Id.). Dr. Vogt did not believe Plaintiff had any problems or pain during the procedure. (Id.). Dr. Vogt recommended Ciprofloxacin twice a day for 5 days following the procedure. (Id.). According to Dr. Vogt, however, any antibiotic would have been appropriate following the procedure, including the Levaquin that Plaintiff was already taking. (Id.).

On October 5, 2010, Dr. Cabrera requested a follow-up with Dr. Vogt, per Dr. Vogt's request. (Id., ¶ 46, citing Exhibit A; Exhibit B, ¶ 46; Exhibit C, pp. 63-64; Exhibit D; and Exhibit E, Grievance File). This request was approved on October 6, 2010. (Id.).

Dr. Cabrera recommended a pill camera procedure to rule out Crohn's disease after examining Plaintiff on October 12, 2010. (Id., ¶ 48, citing Exhibit A; Exhibit B, ¶ 47; and Exhibit C, p. 19). The Assistant Regional Medical Director denied this request, instead suggesting that Dr. Cabrera consider a colonoscopy. (Id.).

Dr. Cabrera ordered Ciprofloxacin for Plaintiff on October 18, 2010. (Id., ¶ 49, citing Exhibit A; Exhibit B, ¶ 48; and Exhibit C, p. 65). On October 20, 2010, Dr. Cabrera requested a colonoscopy, which was approved by Dr. Bynum. (Id., ¶ 50, citing Exhibit A; Exhibit B, ¶ 49; and Exhibit C, p. 65). On October 21, 2010, Dr. Cabrera ordered Plaintiff's enrollment in a chronic pain clinic. (Id.).

Plaintiff returned to the medical unit on October 27, 2010. (Id., ¶ 51, citing Exhibit A; Exhibit B, ¶ 50; and Exhibit C, p. 65). Plaintiff complained of pain and stated that the Mobic he was taking for pain caused him to have nausea and headaches. (Id.). Dr. Cabrera ordered Tylenol/acetaminophen for Plaintiff's pain. (Id.). Plaintiff's vital signs were stable at this time. (Id.).

On November 5, 2010, Dr. Cabrera saw Plaintiff and took his vital signs, all of which were within normal limits. (Id., ¶ 52, citing Exhibit A; Exhibit B, ¶ 51; and Exhibit C, pp. 65-66). Dr. Cabrera examined Plaintiff and informed him that a referral to a university urology had been requested. (Id.).

Plaintiff saw Dr. Vogt on November 8, 2010. (Id., ¶ 53, citing Exhibit A; Exhibit B, ¶ 52; Exhibit C, pp. 66-68; Exhibit D; and Exhibit F, ¶ 10). Plaintiff's flow of stream was better, but Plaintiff still had some burning. (Id.). Plaintiff also complained of testicular pain. (Id.). Dr. Vogt

felt he had exhausted everything he could do for Plaintiff and recommended a second opinion with Dr. Wakefield or Dr. Neal. (Id.). Dr. Vogt also recommended that Plaintiff take Doxycycline, and Dr. Cabrera ordered the Doxycycline for Plaintiff. (Id.).

On November 9, 2010, a colonoscopy was performed on Plaintiff. (Id., ¶ 54, citing Exhibit A; Exhibit B, ¶ 53; and Exhibit C, p. 68). The results of the colonoscopy were normal. (Id.). Dr. Cabrera requested a referral to Dr. Wakefield or Dr. Neal on this date, as Dr. Cabrera had exhausted his treatment options. (Id.). The Assistant Medical Director approved this request on November 11, 2010. (Id.).

On November 18, 2010, Dr. Cabrera again had lab tests ordered. (Id., ¶ 55, citing Exhibit A and Exhibit B, ¶ 54). All of these tests were normal, with the exception of a slightly elevated glucose level. (Id.).

On November 22, 2010, at Plaintiff's request, Dr. Cabrera ordered Prilosec for Plaintiff. (Id., ¶ 56, citing Exhibit A; Exhibit B, ¶ 55; and Exhibit C, p. 68). On November 23, 2010, Dr. Cabrera examined Plaintiff for Hepatitis symptoms. (Id., ¶ 57, citing Exhibit A; Exhibit B, ¶ 56; and Exhibit C, ¶ 69). Dr. Cabrera ordered Salsalate, an antibiotic, for Plaintiff. (Id.).

On December 15, 2010, Dr. Cabrera saw Plaintiff for continued complaints. (Id., ¶ 58, citing Exhibit A; Exhibit B, ¶ 57; and Exhibit C, pp. 69-70). Dr. Cabrera examined Plaintiff and decided that he would recommend an MRI of the lumbosacral spine to rule out cauda equine compression or focal infection of the spinal cord. (Id.). Dr. Cabrera's request was approved on December 16, 2010, by Dr. Bynum. (Id.).

The MRI was performed on December 30, 2010. (Id., ¶ 59, citing Exhibit A; Exhibit B, ¶ 59; and Exhibit C, p. 70). The MRI showed a mild central disc protrusion at L4-5 with a subannular tear.

(Id.).  The MRI also showed a mild annular bulge at L5-S1.  (Id.).  An extruded disc, significant spinal canal, and foraminal stenosis were not established.  (Id.).

Plaintiff was seen at Dr. Wakefield's office on January 5, 2011.  (Id., ¶ 60, citing Exhibit A; Exhibit B, ¶ 59; and Exhibit C, pp. 70-71).  It was recommended that Plaintiff get a CT of the renal colic and return to the clinic.  (Id.).  Dr. Cabrera also ordered Flomax and Tamsulosin for Plaintiff on this date.  (Id.).

On January 6, 2011, Dr. Cabrera requested a CT renal scan and a follow-up appointment with Dr. Wakefield.  (Id., ¶ 61, citing Exhibit A; Exhibit B, ¶ 60; and Exhibit C, p. 71).  Those requests were approved by Dr. Bynum on January 10, 2011, and January 20, 2011, respectively.  (Id.).

Dr. Cabrera examined Plaintiff on January 19, 2011.  (Id., ¶ 62, citing Exhibit A; Exhibit B, ¶ 61; and Exhibit C, p. 71).  Dr. Cabrera explained that his work-up and referrals to specialists had not produced the cause of Plaintiff's pain and that Plaintiff had another appointment scheduled with a urologist.  (Id.).  Dr. Cabrera ordered Ibuprofen and Gabapentin for Plaintiff's pain.  (Id.).

On January 24, 2011, Dr. Cabrera ordered an x-ray of Plaintiff's abdomen and pelvis.  (Id., ¶ 63, citing Exhibit A; Exhibit B, ¶ 62; and Exhibit C, p. 72).  The x-ray showed bilateral nephrolithiasis without evidence of obstructive uropathy, two small density areas within the hepatic parenchyma, subcentimeter retroperitoneal lymph nodes, and an incidental finding of small umbilical hernia.  (Id.).

Plaintiff went to the chronic pain clinic on January 25, 2011, and saw Dr. Michael Gilmore.  (Id., ¶ 64, citing Exhibit A; Exhibit B, ¶ 63; and Exhibit C; pp. 72-73).  Dr. Gilmore's plan was to give Plaintiff a referral to physical therapy and consider having a neurological consult.  (Id.).  Dr. Gilmore also ordered Omeprazole.  (Id.).  On January 26, 2011, an orthopedic consult with Dr. Spears was approved by Dr. Bynum.  (Id.).  The impression of Dr. Spears was that Plaintiff had a

normal lumbar spine and age-appropriate spinal changes, and that Plaintiff's back was negative for radiculopathy or myelopathy. (Id.).

Dr. Vogt wished to see Plaintiff again, so Dr. Cabrera requested approval for a follow-up exam with Dr. Vogt on January 27, 2011. (Id., ¶ 65, citing Exhibit A; Exhibit B, ¶ 64; Exhibit C, p. 74; Exhibit D; and Exhibit F, ¶ 11). Dr. Bynum approved the request on that same date. (Id.). Dr. Vogt examined Plaintiff on February 9, 2011. (Id.). Dr. Vogt's diagnosis was that Plaintiff had urethritis, which is inflammation of the urethra. (Id.). Dr. Vogt's diagnosis was based solely on subjective symptoms. (Id.). According to Dr. Vogt, it is difficult to help alleviate the pain of patients with Plaintiff's type of complaints. (Id.).

From the records provided by Plaintiff and Defendants, it appears that, between April 2010 and June 2011, Plaintiff filed twelve formal complaints through the NECC's grievance process regarding his medical treatment. (See ECF No. 65-6, pp. 59-138; ECF No. 52-9). These complaints allege a wide variety of issues, and many of the issues in Plaintiff's complaints are not discussed in this lawsuit. The Court specifically notes two complaints that mention some of the issues discussed in this lawsuit, although several other complaints contain similar allegations.

On July 30, 2010, Plaintiff submitted an Informal Resolution Request ("IRR"), claiming as follows: "I find that CMS Dr. Cabrera, and that CMS is interfering with perscribed [sic] medical treatment and causing me to suffer unnecessarily with severe pain and putting me in grave danger to my immediate and future health." (ECF No. 65-6, p. 119). Plaintiff described the x-ray treatment Dr. Vogt performed on Plaintiff's kidney stone, noting that "I was left to suffer for one week with severe pain and no medication which Dr. Vogt prescribed [sic]." (Id., p. 120). Debora Steinman, RN, the Regional Manager for CMS, responded as follows:

> *Based upon my review of the medical record and my investigation, I have found the following:*

Your medical record reveals that you had a procedure to remove a kidney stone July 2, 2010. A KUB x-ray was completed on July 12, 2010 and showed that the stone was no longer present. Labs were done and all within acceptable limits. You saw the urologist, Dr. Vogt on July 19, 2010 for a follow up visit. Dr. Vogt noted that you were having prostatitis symptoms. He recommended medication such as an antibiotic and naproxen for discomfort. There were no medical service requests submitted by you for any problems between those dates.

You also say that you went without medications for a week however you returned the evening of July 19, 2010. The nurse notes the recommendations from the urologist and referral to the doctor for orders July 20, 2010. The medications were obtained from the pharmacy.

In conclusion you saw the urologist after having a kidney stone blasted as you have reported however the severe pain in your lower spine that you say Dr. Vogt told you was caused by your prostate problem and not the kidney stone is somewhat misleading as you were diagnosed with two separate conditions.

(Id., p. 118).

Plaintiff followed up with an Offender Grievance, filed September 13, 2010, in which he complained that he had been left in "severe pain" and was only given "ineffective medications and treatments." (Id., p. 123). Jill Perkins, RN, the Health Services Administrator for CMS, and Dr. Cabrera responded as follows:

> *Based upon my review of the medical record, I have found the following:*
>
> July 2, 2010, you had a procedure, ESWL. This procedure breaks up kidney stones so that they can be passed.
> July 12, 2010, KUB x-ray showed that the stone was no longer present. Lab work was within normal limits.
> July 19, 2010, you were seen by Dr. Vogt for a follow-up. He noted that you were having problems with prostatitis symptoms.
> July 20, 2010, orders were signed by the on-site physician for Naproxen 500mg and Ciprofloxacin 500mg.
> July 21, 2010, the medications were received from Pharmacor.
> July 21, 2010, you were scheduled for a medication pickup at 6:45 pm. You did not pickup any medications.
> July 26, 2010, you signed that you received the Naproxen and Ciprofloxacin.
> August 16, 2010 you submitted MSR for continued pain. You reported to the nurse that you had not been taking the Naproxen that it gave you a rash, 21 days after you signed that you had received.

No MSR had been submitted since your scheduled medication pick up on July 21, 2010 and July 26, 2010 stating that you had not received the medication.

Based on the evidence provided in your medical record, I cannot support your Grievance....

(Id., p. 122). Plaintiff filed an Offender Grievance Appeal on October 28, 2010, which was denied on March 2, 2011. (Id., pp. 124-25).

On October 18, 2010, Plaintiff submitted an Informal Resolution Request ("IRR"), claiming as follows:

Dr. Vogt performed an outpatient surgery on my prostate on October 4, 2010. In his pre-op. instructions he ordered CMS and these doctors to send pain medication and antispasm [sic] medication. These doctors and other cms [sic] employees failed to send the medication and forced me to endure this outrageously painful surgical procedure with no pain medication or anti-spasm medications.

(Id., p. 60). Kathy Gonzalez, RN, the Director of Nursing for CMS, responded as follows:

*Based upon my review of the medical record and my investigation, I have found the following:*

The pre-op treatment plan that was ordered from the on-site physician was Levofloxacian and a fleet's enema, which was [sic] both given before leaving NECC.

Based on my review, I cannot support your IRR.

(Id., p. 59). Plaintiff followed up with an Offender Grievance, filed December 3, 2010, in which he complained that Dr. Vogt "ordered this specific pain medication" and that Plaintiff was "forced...to endure this outrageously painful surgical procedure without any pain medication." (Id., p. 62). Jill Perkins, RN, the Health Services Administrator for CMS, and Dr. Cabrera responded as follows:

*Based upon my review of the medical record, I have found the following:*

Dr. Vogt did recommend 4 pre-operative medications. His recommendations included antibiotic Levaquin 500mg, fleets enema 2 hours prior to leaving the facility, an anti-inflammatory Toradol 10mg 30-60 minutes prior to the procedure, and anti-anxiety Valium 30-60 minutes prior to the procedure. Dr. Vogt's office was informed that the drive from NECC to his office was at a minimum of 1.5 hours or 90 minutes. Medications cannot be administered in route by transportation officers. Any

medications given prior to departure would be ineffective by the time the procedure began. Dr. Vogt's office recommended to NECC medical staff that the Levaquin and fleets enema would be needed pre-operatively.

Based on the evidence provided in your medical record, I cannot support your Grievance....

(Id., p. 61). Plaintiff filed an Offender Grievance Appeal on January 28, 2011, which was denied on February 3, 2011. (Id., pp. 63-64).

Plaintiff filed his Complaint on February 7, 2011. Plaintiff currently has two counts (Count I and III) pending against three defendants (Dr. Tomas Cabrera, Dr. Elizabeth Conley, and Dr. Gary Campbell).[1] In Count I, Plaintiff alleges Defendants "knew or reasonably should have known that when the Plaintiff personally informed them, and several in writing, that he was suffering severe pain in his abdomen, liver, kidney, pelvic area, testicles, anus, lower spinal area and other areas," and that Defendants "deliberately denied, delayed and/or refused to provide him with any pain relief and treatment within the community standard of care." (Complaint, ¶ 50). In Count III, Plaintiff alleges that Defendants "knew or reasonably should have known that when they interfered with Defendant Vogt's prescribed medical treatment for the Plaintiff to be sent to the Theramix surgical procedure with pain medicine and anti-spasm medication, and they refused to do so, [this caused] the Plaintiff to suffer more than thirty minutes of a grossly invasive, internal surgical procedure without any anesthetic, pain relief or anti-spasm medication, [and caused] Plaintiff to intentionally suffer excruciating pain, and thereafter denied him any pain management or antibiotics[.]" (Id., ¶ 63). Plaintiff claims Defendants' actions were below the established standard of care, constituted cruel and unusual punishment, and violated the Eighth and Fourteenth Amendments to the United States Constitution. (Id.).

---

[1]This Court dismissed the other counts and defendants upon its initial review of the Complaint. (See Memorandum and Order, ECF No. 4).

## STANDARD OF REVIEW

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Id</u>.

A moving party always bears the burden of informing the Court of the basis of its motion. <u>Celotex</u>, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." FED. R. CIV. P. 56(e); <u>Anderson</u>, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. <u>Anderson</u>, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. <u>Anderson</u>, 477 U.S. at 255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. <u>Id</u>. at 249.

## DISCUSSION

### I.      Eight Amendment Claims

The Eighth Circuit has held that "[t]he Eighth Amendment requires prison officials to provide humane conditions of confinement, and one condition of confinement is the medical attention given

to a prisoner." Aswegan v. Henry, 49 F.3d 461, 463-64 (8th Cir. 1995) (internal quotations and citations omitted). "To succeed on a claim of deprivation of medical care in violation of the Eighth Amendment, plaintiff must prove that defendants were deliberately indifferent to his serious medical needs." Moots v. Lombardi, No. 4:02CV1886, 2005 WL 4541944, at *5 (E.D. Mo. Feb. 10, 2005) (citing Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997)).

> There is both an objective and subjective component to a claim of deliberate indifference. A plaintiff must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.

Tlamka v. Serrell, 244 F.3d 628, 633 (8th Cir. 2001) (internal quotations and citation omitted). A prison official acts with the requisite deliberate indifference when that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). Furthermore, "[m]ere negligence or medical malpractice [is] insufficient to rise to a constitutional violation." Moots, 2005 WL 4541944 at *5 (citing Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)).

### A.    Defendant Dr. Tomas Cabrera

Plaintiff claims Defendant Cabrera refused to provide Plaintiff with treatment or effective pain medication for the "severe pain in his abdomen, liver, kidney, pelvic area, testicles, anus, [and] lower spinal area" and that Defendant Cabrera "interfered with [Dr.] Vogt's prescribed medical treatment" with regards to the Theramix procedure. (See Complaint, ¶¶ 51, 63). The Court finds that even assuming that Plaintiff could establish the existence of a serious medical need, the evidence provided by Dr. Cabrera overwhelmingly supports the conclusion that he provided adequate medical care to Plaintiff. See Reynolds v. Crawford, No. 2:06CV9, 2007 WL 1656269, at *3 (E.D. Mo. Jun. 6,

2007).  As noted above, Dr. Cabrera first evaluated Plaintiff on April 29, 2009, and examined Plaintiff

on numerous occasions through the date that Plaintiff filed his Complaint.  Dr. Cabrera provided

Plaintiff with physical assessments, follow-up appointments, medical records review, patient

education, medications, treatment, x-rays, and various restrictions on his activities.  Dr. Cabrera

referred Plaintiff to several specialists, including urologists Dr. Vogt and Dr. Wakefield, orthopedist

Dr. Spears, and Dr. Gilmore at the pain management clinic.  Contrary to Plaintiff's allegations,

Plaintiff's medical records show Dr. Cabrera ordered numerous pain medications for Plaintiff,

including Toradol, Naproxen, Tylenol, Prednisone, Meloxicam, Mobic, Gabapentin, and Ibuprofen.

In support of his Motion for Summary Judgment, Defendant Cabrera submitted the

declaration of Dr. Vogt[2], in which he testifies as follows:

> ...

> 9.      The microwave treatment I recommended was approved by Corizon
> doctors and I performed the microwave treatment on October 4, 2010.  A rectal
> ultrasound was done to measure the length of the patient's urethra to determine the
> length of the catheter.  The patient did well during the procedure.  I do not believe
> that the patient had any problems or pain during this procedure.  My pre-procedure
> order was for Levaquin, Toradol, Valium, a fleet enema, Levsin (anti-spasm med) 30-
> 60 minutes before the procedure all for comfort and not absolutely necessary.
> However, the pre-procedure medications are not needed or required to perform the
> microwave treatment.  Many patients take the medication far in advance of 60 minutes
> before the procedure and any effect the medications had would have been worn off.
> I still perform the procedure.  There are times when my patients do not take the
> medication I prescribe pre-procedure, but I still perform the procedure.  The patient
> tolerated the procedure here well.  I never saw the patient have any problems during
> the procedure.  I recommended Cipro twice a day for 5 days, but any antibiotic would

---

[2]Defendant Cabrera also offers sworn declarations from Dr. Bynum, Dr. Conley, and Dr.
Campbell.  All three additional declarations state that, based on these physicians' review of
Plaintiff's medical records, Dr. Cabrera never denied Plaintiff any necessary treatment nor medical
care nor deliberately denied, delayed, or refused to provide Plaintiff with any pain relief or
treatment.  (See Exhibits G, Declaration of Dr. Carl Bynum, ECF No. 49-8; Exhibit H,
Declaration of Dr. Elizabeth Conley, ECF No. 49-9; and Exhibit I, Declaration of Dr. Gary
Campbell, ECF No. 49-10).

have been appropriate, especially Levaquin. The antibiotic coverage that Mr. Caudle was on post-procedure was appropriate and within the standard of care.

...

> 12.     Mr. Caudle has had excellent care and treatment.

> 13.     Corizon doctors approved all of the diagnostic and treatment suggestions or plans that I recommended.

...

> 17.     To my knowledge, Drs. Cabrera, Conley, and Campbell never denied Mr. Caudle any necessary treatment or medical care.

> 18.     To my knowledge, Drs. Cabrera, Conley, and Campbell did not deliberately deny, delay and/or refuse to provide Mr. Caudle with any pain relief and treatment.

(Exhibit F, Declaration of Dr. Eric Vogt, ECF No. 49-7).

The Court notes that Plaintiff's main complaint appears to be that he was not given sufficient pain medication. Thus, Plaintiff merely disagrees with his medical treatment. Since Plaintiff's allegations represent nothing more than mere disagreement with the course of his medical treatment, he has failed to state an Eighth Amendment claim of deliberate indifference. See Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990). Under these circumstances, the Court finds no evidence that Dr. Cabrera was deliberately indifferent to Plaintiff's serious medical needs. Defendant Cabrera's Motion for Summary Judgment must therefore be granted. See Dulany, 132 F.3d at 1240 ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment.").

## B.     Defendant Dr. Elizabeth Conley

Plaintiff's specific claims against Defendant Conley are that, as Regional Medical Director of CMS, she denied Plaintiff the pill camera procedure, "all pain medication," and the medications

prescribed by Dr. Vogt to accompany the Theramix procedure. (See Complaint, ¶¶ 36, 44, 63). The evidence provided by Defendant Conley shows, however, that Defendant Conley approved all procedures and medications that were requested on Plaintiff's behalf. In support of her Motion for Summary Judgment, Defendant Conley submitted her own declaration in which she states she approved the following treatments on the following dates on behalf of Plaintiff:

- March 4, 2010: request for HCV Genotyping
- March 18, 2010: liver biopsy
- April 22, 2010: CBC
- May 10, 2010: urology consult
- May 25, 2010: GU CT scan
- May 25, 2010: right extracorporeal shock wave litotrypsy
- July 24, 2010: follow-up appointment with Dr. Vogt

(Exhibit B, ¶¶ 9-15). Dr. Conley stated those requests were the only requests made to her with regards to Plaintiff between April 29, 2009, and February 7, 2011. (Id., ¶ 17).

Defendant Conley also submitted several declarations from medical doctors involved in or familiar with Plaintiff's care. Dr. Campbell states in his declaration that "Dr. Conley, in her capacity as Regional Medical Director of CMS, approved every referral and procedure for Mr. Caudle that was requested." (Exhibit E, Declaration of Dr. Gary Campbell, ECF No. 52-4, ¶ 10). Dr. Campbell also states that "Dr. Conley **never** refused to order a pill camera for Mr. Caudle," and that Defendant Conley did not "den[y] Mr. Caudle any necessary treatment or medical care." (Id., ¶¶ 15, 19). Dr. Bynum, the current Regional Medical Director of CMS, states in his declaration that Defendant Conley "approved numerous outside referrals and diagnostic and treatment procedures for Mr. Caudle" and "went above and beyond in trying to find a diagnosis for Plaintiff's alleged pain." (Exhibit D, Declaration of Dr. Carl Bynum, ECF No. 52-5, ¶¶ 11, 13). Dr. Cabrera states in his declaration that "[t]he Assistant Regional Medical Director, **not Dr. Conley or Dr. Campbell**, denied the request for a pill cam, but asked that I consider a colonoscopy." (Exhibit E, Declaration

of Tomas Cabrera, M.D., ECF No. 52-6, ¶ 47). Finally, Dr. Vogt states in his declaration that "Corizon doctors approved all of the diagnostic and treatment suggestions or plans that I recommended," and that Defendant Conley "never denied Mr. Caudle any necessary treatment or medical care." (Exhibit G, Declaration of Dr. Eric Vogt, ECF No. 55-8, ¶¶ 13, 17).

The Court finds that, even assuming that Plaintiff could establish the existence of a serious medical need, the evidence provided by Defendant Conley overwhelmingly supports the conclusion that she provided adequate medical care to Plaintiff. See Reynolds, 2007 WL 1656269 at *3. Defendant Conley approved every treatment request that was made to her, and even assuming the decision to deny the pill camera procedure in favor of a colonoscopy was improper, Dr. Conley did not make that decision. Under these circumstances, the Court finds no evidence that Dr. Conley was deliberately indifferent to Plaintiff's serious medical needs. Defendant Conley's Motion for Summary Judgment as to Plaintiff's Eighth Amendment claims must therefore be granted.

### C.     Defendant Dr. Gary Campbell

Plaintiff does not allege that Defendant Campbell was personally involved in providing any of his medical care. Again, Plaintiff's specific claims against Defendant Campbell are that he denied Plaintiff the pill camera procedure, "all pain medication," and the medications prescribed by Dr. Vogt to accompany the Theramix procedure. (See Complaint, ¶¶ 36, 44, 63). The evidence provided by Defendant Campbell shows, however, that Defendant Campbell was not involved in any of these decisions. In support of his Motion for Summary Judgment, Defendant Campbell submitted his own declaration in which he states "I **never** personally treated Mr. Caudle" and "I **never** personally was asked to approve any medication, treatment, referral or procedure with regards to Mr. Caudle." (Exhibit B, Declaration of Dr. Gary Campbell, ECF No. 55-3, ¶¶ 11, 12).

Defendant Campbell also submitted several declarations from medical doctors involved in or familiar with Plaintiff's care. Dr. Carl Bynum states in his declaration that Defendant Campbell "never treated Mr. Caudle and never was involved in any referral requests or diagnostic or medication requests." (Exhibit D, Declaration of Dr. Carl Bynum, ECF No. 55-5, ¶ 12). Dr. Elizabeth Conley states in her declaration that Defendant Campbell "did not have any involvement in the care and treatment of Mr. Caudle." (Exhibit E, Declaration of Dr. Elizabeth Conley, ECF No. 55-6, ¶ 7). The declaration of Dr. Vogt notes that "Corizon doctors approved all of the diagnostic and treatment suggestions or plans that I recommended," and that Defendant Campbell "never denied Mr. Caudle any necessary treatment or medical care." (Exhibit F, Declaration of Dr. Eric Vogt, ECF No. 55-7, ¶¶ 13, 17). Finally, the declaration of Dr. Tomas Cabrera notes that "[t]he Assistant Regional Medical Director, **not Dr. Conley or Dr. Campbell**, denied the request for a pill cam, but asked that I consider a colonoscopy." (Exhibit G, Declaration of Tomas Cabrera, M.D., ECF No. 55-8, ¶ 47).

The Court finds that, even assuming Plaintiff has established the existence of a serious medical need, he cannot show Defendant Campbell exhibited deliberate indifference to that need. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir.1990); see also Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir.1985) (claim not cognizable under § 1983 where Plaintiff fails to allege that Defendant was personally involved in or directly responsible for the incidents that injured Plaintiff). Defendant Campbell did not evaluate Plaintiff's medical condition and did not deny him access to medical care. Therefore, the Court finds no evidence that Dr. Campbell was deliberately indifferent to Plaintiff's serious medical needs. Defendant Campbell's Motion for Summary Judgment as to Plaintiff's Eighth Amendment claims must therefore be granted.

## II.    Fourteenth Amendment Claims

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Thus, claims regarding the right to either procedural or substantive due process must begin with identification of a protected liberty or property interest. Singleton v. Cecil, 176 F.3d 419, 424-25, 425 n.7 (8th Cir.1999).

In order to constitute a liberty interest, an individual must have a legitimate claim or entitlement to the subject of the deprivation which rises to more than a unilateral hope or expectation. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 459 (1989). A protected liberty interest may arise from either the Due Process Clause of the United States Constitution itself or from a state-created statutory entitlement. Hewitt v. Helms, 459 U.S. 460, 466 (1983).

The Supreme Court has recognized protected interests in a variety of postconviction contexts, extending substantive constitutional protections to state prisoners on the premise that the Due Process Clause of the Fourteenth Amendment requires States to respect certain fundamental liberties in the postconviction context. See, e.g., Thornburgh v. Abbott, 490 U.S. 401 (1989) (right to free speech); Turner v. Safley, 482 U.S. 78 (1987) (right to marry); Cruz v. Beto, 405 U.S. 319 (1972) (per curiam) (right to free exercise of religion); Lee v. Washington, 390 U.S. 333 (1968) (per curiam) (right to be free of racial discrimination); Johnson v. Avery, 393 U.S. 483 (1969) (right to petition government for redress of grievances).

A state violates substantive due process when it infringes on a fundamental liberty interest without narrowly tailoring that interference to serve a compelling state interest, or engages in conduct so outrageous that it shocks the conscience or otherwise offends judicial notions of fairness, or is

offensive to human dignity. <u>Weiler v. Purkett</u>, 137 F.3d 1047, 1051 (8th Cir. 1998) (internal quotations omitted). Even assuming Plaintiff's right to the pain medication he desired was a fundamental liberty interest, Plaintiff's medical records and the declarations offered in support of Defendants' motions for summary judgment show Defendants provided Plaintiff with diligent and competent medical care and did not engage in any behavior that shocks the conscience. Thus, there was no substantive due process violation.

There was also no procedural due process violation. "Due process is flexible and calls for such procedural protections as the particular situation demands." <u>Mathews v. Eldridge</u>, 424 U.S. 319, 334 (1976) (internal quotation and alteration omitted). At its essence, however, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." <u>Id.</u> at 333 (internal quotation omitted). Plaintiff filed at least twelve complaints through the NECC's internal grievance procedure and was, therefore, given such an opportunity. The fact that Plaintiff is dissatisfied with the outcomes of the grievance procedure does not mean that Plaintiff was denied due process. Defendants' motions for summary judgment as to Plaintiff's Fourteenth Amendment claims must therefore be granted.[3]

## <u>CONCLUSION</u>

Accordingly,

**IT IS HEREBY ORDERED** that Dr. Tomas Cabrera's Motion for Summary Judgment (ECF No. 48) is **GRANTED**, and Plaintiff's claims are dismissed with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

---

[3]Since summary judgment has been granted in favor of all remaining defendants, the Court does not need to address Defendants' argument that Plaintiff failed to exhaust his claims through the NECC's internal grievance procedure.

**IT IS FURTHER ORDERED** that Defendant Dr. Elizabeth Conley's Motion for Summary Judgment (ECF No. 51) is **GRANTED**, and Plaintiff's claims are dismissed with prejudice.

**IT IS FURTHER ORDERED** that Defendant Dr. Gary Campbell's Motion for Summary Judgment (ECF No. 54) is **GRANTED**, and Plaintiff's claims are dismissed with prejudice.

Dated this 29th day of June, 2012.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE